Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| ANGEL L. ORTIZ GONZALEZ<br><br>Parte Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Parte Recurrida | TA2026RA00057 | *Revisión Decisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso núm.: GMA50085225<br><br>Sobre: Remedio Administrativo |

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de marzo de 2026.

El 9 de febrero de 2026, el señor Ángel L. Ortiz González (el señor Ortiz González o el recurrente) presentó por derecho propio e *in forma pauperis*, un recurso de Revisión Judicial titulado *Certiorari: Auto de Revisión* en el que solicitó que revoquemos la *Respuesta al miembro de la población correccional* emitida el 19 de diciembre de 2025, notificada el 23 de diciembre de 2025 por la División de Remedios Administrativos adscrita al Departamento de Corrección y Rehabilitación (DCR o la parte recurrida).[1]

En el aludido dictamen, el DCR determinó que, el señor Ortiz González fue orientado con respecto a las razones por las cuales fue ordenado a desistir de continuar laborando.

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

---

[1] *Véase* expediente administrativo del Departamento de Corrección y Rehabilitación (DCR), págs. 8-9.

**I.**

El caso de epígrafe tuvo su inicio el 28 de octubre de 2025, recibida ante el DCR el 3 de noviembre de 2025, cuando el recurrente instó una *Solicitud de Remedio Administrativo* en la que alegó que, el DCR no le notificó los motivos por los cuales fue dado de "baja" de laborar en un *car wash*.[2] Adujo que, tenía una conducta intachable y, por tanto, no debió ser removido de sus labores.

El 19 de diciembre de 2025, notificada el 23 de diciembre de 2025, el DCR emitió una *Respuesta al miembro de la población correccional* en la que determinó que, el confinado fue orientado al respecto.[3]

El 29 de diciembre de 2025, recibida ante el DCR el 30 de diciembre de 2025, el recurrente radicó una *Solicitud de reconsideración* en la que reiteró sus alegaciones debido a que se ha comportado adecuadamente y, por tanto, el DCR debió permitirle continuar laborando.[4]

El 8 de enero de 2026, notificada el 13 de enero de 2026, la parte recurrida emitió una *Respuesta de reconsideración al miembro de la población correccional* en la que denegó la *Solicitud de reconsideración*.[5] Particularmente, el DCR expresó lo siguiente:

> Sr. Ortiz Gonzalez, en su Solicitud de Remedio usted expreso su interés en conocer las razones por las cuales fue dado de baja de su trabajo. El caso fue discutido en el Área de Sociales. Nos informaron que el pasado 23 de septiembre de 2025, tras culminar su jornada laboral en el área de lavado de autos usted fue llevado a la institución. Pasó por un proceso de registro al desnudo, detectaron un bizcocho en el área de los genitales. El Reglamento establece que bajo ningún concepto se puede introducir nada a la institución penal.

Inconforme, el 9 de febrero de 2026, el señor Ortiz González presentó un recurso de Revisión Judicial ante nos en el que formuló los siguientes errores:

---

[2] *Véase* expediente administrativo del DCR, págs. 4-5.
[3] *Véase* expediente administrativo del DCR, págs. 8-9.
[4] *Véase* expediente administrativo del DCR, págs. 10-12.
[5] *Véase* expediente administrativo del DCR, págs. 13-14.

Erró la Administración de Corrección y el Operador de la máquina rayos X y Encargado de registros de todo confinado que ingrese, al mentir y estipular que se encontró unos bizcochos en al área de los genitales.

Erró la Administración de Corrección y el oficial que realizó el informe negativo al no hacer la debida investigación antes de realizar dicho informe.

Erró la Administración de Corrección y el Supervisor de turno la TNT Karen Monte al solicitarle al oficial que realice el informe sin haber investigado dicha situación.

Erró la Administración de Corrección y la Jefa de Sociales, la Sra. Zinnia Zambrana al darle de baja al recurrente sin la debida investigación.

En cumplimiento con nuestra *Resolución*, el 9 de marzo de 2026, el DCR radicó ante nos un *Escrito en cumplimiento de Resolución*.

Con el beneficio de la comparecencia de las partes, procederemos a resolver el recurso ante nos.

**II.**

**A.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota*, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Otero* v. *Toyota, supra*, pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior*, 120 DPR 194, 210 (1987). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia

sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716, 727-728 (2005); *Domingo v. Caguas Expressway Motors,* 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el expediente administrativo. *Vázquez et al. v. DACo,* 216 DPR ___ (2025), 2025 TSPR 56.  Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. *Otero* v. *Toyota, supra,* pág. 728. El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728. La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.,* 138 DPR 200,

213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo,* 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra,* pág. 728; *Ramírez v. Depto. de Salud,* 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez et al. v. DACo, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra.* Ello, como mecanismo interpretativo del poder judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota, supra,* pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia,

por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos,* 184 DPR 712, 744-745 (2012). Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota,* 163 DPR 716, 730 (2005). Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo* v. *Yiyi Motors,* 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors,* *supra,* pág. 77.

**B.**

El Art. VI, Sec. 19, Const ELA [Const P.R], LPRA, Tomo 1, establece como política pública que, "...reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al

tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Cónsono con lo anterior, la ley orgánica del Departamento de Corrección y rehabilitación, Art. 2 de *El Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, Plan de Reorganización Núm. 2 de 21 de noviembre de 2011 (Plan de Reorganización Núm. 2-2011), según enmendado, 3 LPRA., Ap. XVIII, Art. 2, el DCR tiene el deber de custodiar y proveer una rehabilitación a las personas confinadas. Asimismo, el citado artículo dispone lo siguiente:

> Con la aprobación de este Plan, se decreta como política pública del Gobierno de Puerto Rico la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad.

Con ello, dentro de las facultades del Secretario del DCR, dicho ente administrativo tiene la facultad de "adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios". Art. 7 (aa) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7. También, ostenta el deber de supervisar las personas que estén en condiciones de libertad provisional que le fueron impuestas a los confinados que estén bajo su jurisdicción. Art. 7 (ff) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7. De igual forma, cuando una persona confinada incumpla con las condiciones de libertad provisional debe informar a los tribunales y a los funcionarios pertinentes sobre dicho incumplimiento. Art. 7 (gg) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7.

Por otro lado, la Regla V del *Reglamento para atender las solicitudes de remedios administrativos radicadas por los miembros de la población correccional,* Reglamento Núm. 8583 del 4 de mayo de 2015 (Reglamento Núm. 8583) rige cómo se deben llevar a cabo los procedimientos ante el DCR con relación a los reclamos de los confinados. Con ello, la Regla VI del Reglamento Núm. 8583 dispone que, la División de Remedios administrativos del DCR tendrá jurisdicción para atender las solicitudes de remedio radicadas por los confinados en cualquier institución o facilidad correccional que se encuentre. Los incidentes en los cuales un miembro de la población correccional podrá interponer una solicitud de remedio son:

    a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o su plan institucional.
    b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.
    c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad"
    d. Alegaciones de violencia sexual por parte de un miembro de la población correccional conforme "Prison Rape Elimination ACT" (PREA) (115.51ª, d,115.52-b1,b2,b3).

Por otro lado, el *Manual sobre oportunidad de empleo y Trabajo para Miembros de la Población Correccional* de 22 de junio de 2000, enmendado el 19 de agosto de 2003, AC PROG009 (en adelante, Manual de Empleo) en la que rige las oportunidades de empleo que pueden tener los confinados. En esa línea, el Art. III (B) del Manual de Empleo, *supra,* dispone que, la participación de un miembro de la población correccional en los programas de trabajo será voluntaria pero la selección del Trabajo quedará a discreción del Comité de Clasificación y Tratamiento. La asignación del trabajo será basada en los siguientes criterios: destrezas, preparación académica o vocacional, habilidades especiales, patrones de conducta, intereses individuales, nivel de custodia y recursos disponibles en la institución. Art. III (A)(2) del Manual de Empleo,

*supra*. Ahora bien, una vez le confinado es asignado a una labor, el Art IV (B) del Manual de Empleo, *supra*, le confiere al Comité de Clasificación y Tratamiento si ratifica, revoca o modifica las labores iniciales empleando los siguientes criterios:

1. Cambios de salud o condición física del miembro de la población correccional;
2. Grados académicos o vocacionales alcanzados;
3. Cambios en la clasificación, patrones de conducta del miembro de la población correccional o sanciones disciplinarias;
4. Recomendaciones del supervisor en el área de trabajo;
5. Razones de seguridad relacionadas con el miembro de la población correccional o la institución.

**III.**

En el caso de autos, el recurrente adujo que, el DCR erró en no permitirle laborar, sin llevar a cabo la debida investigación y llegar a conclusiones sobre hechos que no ocurrieron. Ello, toda vez que, no tenía unos bizcochos debajo de su pantalón.

Por estar íntimamente relacionados los señalamientos de error, procederemos a discutirlos en conjunto.

Harto es conocido que, debemos brindarle deferencia a las determinaciones de hechos que esbozan las agencias administrativas. En reiteradas ocasiones, este Tribunal ha resuelto que no intervendremos en las determinaciones de hecho de una agencia, salvo que la determinación administrativa no este basada en evidencia sustancial; el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional. De lo contrario, debemos abstenernos en modificar las determinaciones de hechos que formule la agencia toda vez que el foro administrativo evaluó la prueba desfilada ante su consideración.

Como corolario de lo anterior, el DCR tiene el deber de promulgar reglamentos con tal de promover la rehabilitación de las

personas confinadas. Con ello, el DCR creó el Manual de Empleo, *supra*, con guías para proveer a las personas confinadas experiencias laborales en aras de tener una rehabilitación. Así pues, el DCR le delegó al Comité de Clasificación y Tratamiento la labor de ubicar a los confinados en lugares de trabajo a tenor con los criterios que estatuye el Art IV (B) del Manual de Empleo, *supra.*

Luego de un examen detallado del expediente ante nos, resolvemos que el DCR no incidió en los errores señalados por el recurrente.

El DCR le concedió al señor Ortiz González la oportunidad de laborar en un *car wash* con tal de brindarle la oportunidad de insertarse en el ámbito laboral. Sin embargo, surge del expediente administrativo que, el recurrente, al entrar a la institución penal, fue registrado y empleados del DCR encontraron que tenía debajo de su pantalón unos bizcochos. Así pues, al amparo del Art IV (B) del Manual de Empleo, *supra*, el Comité de Clasificación y Tratamiento razonó que, ante la conducta desplegada por el recurrente procedía que el señor Ortiz González cesara de sus funciones. Ello, pues insertó unos alimentos a la institución carcelaria que fueron <u>descubiertos</u> luego de que unos empleados de corrección inspeccionaran al recurrente. Con ello, el Comité de Clasificación y Tratamiento tiene la potestad de determinar si la conducta de un confinado amerita que no continúe en las labores que le fueron asignadas. Ciertamente, esta Curia resuelve que, no debemos intervenir en alterar la determinación del Comité de Clasificación y Tratamiento en virtud de que el recurrente entró unos alimentos a la institución penal sin previo aviso ni consentimiento del DCR. Ante ello, dicha conducta fue suficiente motivo para remover al recurrente de su puesto laboral. Consecuentemente, no alteraremos el dictamen debido a que el DCR

fue quien denotó que la conducta del recurrente era contraria a los parámetros de la institución carcelaria.

A tenor con lo anterior, confirmamos la *Resolución* recurrida debido a que el Comité de Clasificación y Tratamiento no fue arbitrario ni caprichoso en remover al recurrente de sus funciones laborales ante su conducta sospechosa de insertar unos alimentos sin el conocimiento del DCR. Además, le corresponde al Comité de Clasificación y Tratamiento determinar si el recurrente puede nuevamente laborar y no al DCR. Ello, pues dicha labor fue encomendada al Comité de Clasificación y Tratamiento.

**IV.**

Por los fundamentos que anteceden, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones